LILJEBERG, J.,
CONCURS WITH REASONS WITH WHICH WICKER, J. JOINS '
|4aI agree with the decision to affirm relator’s convictions and sentences, but *367 disagree with certain reasons provided in the opinion.
■ This case arises out of a multi-year investigation initiated by the Federal Bureau of Investigations (“FBI”) New Orleans Gang Task Force, which included federal and state officers.' The majority opinion explains the results of this investigation resulted in the indictments of 21 defendants in federal and state courts charged with over 50 acts of racketeering and 30 additional criminal offenses. During the investigation,, FBI task force officers, who attested to be federal officers, as well as an Assistant U.S.. Attorney for the U.S. Department of Justice, applied for and obtained wiretap orders signed by a federal judge. The evidence indicates the wiretap applications were approved by a designated deputy assistant attorney general with the U.S. Department of Justice. The communications at issue were monitored in a wire monitoring room located at FBI offices under, the supervision of FBI agents. . ...
In his first assignment of error, defendant contends the wiretap evidence should be excluded because the procedure federal agents used to obtain the warrants did not comply with the Louisiana Electronic Surveillance Act, La. R.S. 15:1301, et. seq. (“Louisiana Act”). Defendant does not contest that the wiretaps were obtained lawfully under 18 U.S.C. § 2518, the federal wiretap law. Therefore, the central issue before this Court is whether intercepted telephone calls [¿¿obtained pursuant to lawful federal wiretap orders may be introduced as evidence in a Louisiana state court. This issue is res nova in Louisiana.
The relevant provisions of.the Louisiana Act indicate the "Louisiana legislature did not intend to control or govern how federal agents obtain wiretap search warrants from federal courts. Furthermore, the Louisiana Act does not explicitly prohibit the use of evidence obtained pursuant to a legal federal wiretap order in state court prosecutions. La. R.S. 15:1303 makes it unlawful for any “person” to willfully intercept wire, electronic or oral communications unless in accordance with procedures and exceptions set forth in the Louisiana Act. A “person” is defined in La. R.S. ,15:1302(16) as “any employee or agent of the state or a political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation.” Federal employees and agents are not included in the definition of a “person.” When the federal agents obtained the wiretap orders, they were not acting individually or on their own behalf, but rather as agents of the United States. Therefore, I do not believe federal agents should be considered “individuals” under the definition of “person.”
In addition, La. R.S. 15:1302(12) limits the definition of an “investigative or law enforcement officer” to state police officers and district attorneys, Section 1302(6) limits the definition of a “court of competent jurisdiction” to state courts, and Section 1302(13) defines a “judge” as a state court judge. Federal officers, courts and judges are not included. Courts from other jurisdictions recognize that .under the doctrine of federal preemption, state laws cannot render- illegal federal agents’ .conduct in compliance with federal law. See, e.g., People v. Coleman, 227 Ill.2d 426, 438, 882 N.E.2d 1025, 1031-32, 317 Ill.Dec. 869, 875-76. (2008); Basham v. Commonwealth, 675 S.W.2d 376, 379 (Ky. 1984); State v. Minter, 116 N.J. 269, 278, 561 A.2d 570, 574-575 (N.J. 1989).
Based on the foregoing, I believe the Louisiana legislature did not intend to Lsdictate how federal agents obtain wiretap orders from federal courts in Louisiana. Consequently, I .believe the wiretap evidence at issue was not obtained in viola- *368 tión of the Louisiana Act and should not be subject to exclusion under this provision.
In its analysis of this issue, the opinion discusses a New Jersey case, State v. Minter, supra. In that matter, a New Jersey detective arranged for a confidential informant to meet with Federal Drug Enforcement Administration (“DEA”) agents. The DEA agents arranged for the confidential informant to contact the defendant about purchasing illegal drugs. The DEA agents recorded calls between the confidential informant and the defendant without obtaining a warrant because federal law did not require a warrant when one party consents to the conversation. The confidential informant was not able to complete a controlled buy with the defendant while he was under federal surveillance. The DEA closed its case and turned its evidence over to state prosecutors, who later indicted defendant for possession of drugs with intent to distribute.
Defendant moved to suppress the wiretap evidence and the trial court denied the motion. The appellate court affirmed and the New Jersey Supreme Court granted defendant’s petition for certification on the wiretap issue. The New Jersey Supreme Court recognized that wiretap evidence obtained independently by federal officers in accordance with federal law, but not state law, should be admissible in a state court prosecution. Minter, 561 A.2d at 576-77. In analyzing the New Jersey wiretap law, the Supreme Court noted the act only included state agents in its definition of law enforcement officer and its requirements did not extend to federal agents. Id. at 575. The court further noted that excluding the evidence from a state court prosecution would not serve to deter unlawful conduct by police when federal law authorized the officers’ conduct. Id. at 576.
The New Jersey Supreme Court then raised the issue of whether the same evidence would be admissible in state court when federal agents were acting in | ^cooperation with state agents. Id. at 577. The New Jersey Supreme Court did not resolve that issue, but rather remanded the case for a determination as to “whether this was a joint undertaking sufficiently implicating the purposes of the New Jersey Wiretap Law and the privacy interests of its citizens such that the evidence should be suppressed.” Id. at 578.
Though the Minter court left this issue unresolved, other jurisdiction have addressed situations involving joint federal/state narcotics investigations and determined wiretap evidence lawfully obtained in accordance with federal law was admissible in state court, even though the evidence was not obtained in compliance with requirements of the state wiretap law. For example, in People v. Coleman, supra, the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (“ATF”) began a joint narcotics investigation with a local police department and county sheriffs office. An ATF agent and county detective met with a confidential informant who agreed to participate in a controlled buy with the defendant. The ATF agent obtained authorization for the confidential informant to wear a recording device. At trial, the county detective testified that he met with the confidential informant on several occasions and had him record telephone conversations with the defendant prior to controlled buys. The county detective also equipped the confidential informant with a recording device to use during one of the controlled buys with defendant.
Prior to trial, the defendant filed a motion to suppress the recordings of his conversations with the confidential informant claiming they were obtained in violation of the Illinois wiretap statute. The Coleman court reaffirmed the holding of its intermediate court finding that electronic surveil *369 lance evidence gathered pursuant to federal law, but in violation of state law, is admissible unless there is evidence of collusion between federal and state agents to avoid the requirements of the state law. 317 IlLDec. 869, 882 N.E.2d at 1032. The Illinois Supreme Court noted that no such |47evidence existed and that the cooperation of federal and state agents to target drug suppliers did not constitute collusion. Id.
The Kentucky Supreme Court reached a similar conclusion in Basham v. Commonwealth, supra, by determining that wiretap evidence obtained pursuant to a federal law is admissible in state court unless evidence of collusion exists. 676 S.W.2d at 381. The Basham court also noted that working jointly and concurrently in an investigation, and sharing information and combining efforts is not collusion, but rather cooperation. Id. at 382.
In a more recent case, Commonwealth v. Brown, 456 Mass. 708, 925 N.E.2d 845 (Mass. 2010), the question arose as to whether an audio/video tape recording of a defendant’s conversation in the home of a cooperating witness was properly admitted into evidence in state court where it was the product of a federal investigation in which Massachusetts law enforcement personnel participated. Id. at 847. In 2004, the DEA began investigating the defendant physician’s prescribing practices for opiates. A DEA special agent conducted the investigation through a DEA-sponsored Cape Cod task force, a joint Federal and local law enforcement operation. The task force included members of local law enforcement who were deputized as special DEA agents. One local law enforcement officer was not deputized by the DEA, but he assisted in the investigation as well. The local officer convinced one of the defendant’s patients to participate in a sting operation. An Assistant U.S. Attorney approved a request by the task force to record the encounter using DEA-supplied equipment.
The Massachusetts wiretap statute generally prohibits recordings without the consent of all parties. Id. at 849. The defendant moved to suppress the evidence as unlawfully obtained under the Massachusetts wiretap statute. The court concluded suppression of the recording was not warranted because Massachusetts law does not constrain federal authorities unless they operate as part of a state investigation. 14SM at 850. The court noted that participation of local law enforcement officers in the investigation did not render it a state investigation. Id. at 850. The court further elaborated that, to the extent the object of the state statute is to deter unlawful conduct of state officials, excluding evidence lawfully obtained by federal agents in state courts does not further this goal and that “rigid adherence to a rule of exclusion can only frustrate the public interest in the admission of evidence of criminal activity.” Id. at 851; see also Commonwealth v. Gonzalez, 426 Mass. 313, 688 N.E.2d 455 (Mass. 1997).
It is important to first note that in the present matter, defendant did not argue collusion existed between federal and state officers in obtaining the wiretap orders at issue. The affiants who obtained the wiretap orders stated they were federal agents. Furthermore, the wiretap monitoring room was located within the FBI office and supervised by FBI agents. I also note that exclusion of the evidence in this matter would not further the purposes of the Louisiana Act in protecting privacy interests of the citizens of the State of Louisiana. Excluding this evidence would only serve to frustrate citizens’ interests in deterring the activities of violent criminal organizations. Accordingly, I believe the trial court properly determined the evidence need not *370 be excluded and did not abuse its discretion in denying defendant’s motion to suppress.
With respect to defendant’s second assignment of error, I ■ disagree with the statement that defendant was not found in “actual possession of the cocaine on November 18, 2013.’’ Although law enforcement did not witness a “hand to hand transaction” between defendant and Thornton, the jury could have determined defendant was in physical or actual possession of cocaine based on the circumstantial evidence -set forth in the majority opinion. See, e.g., State v. Stephens, 47,978 (La. App; 2 Cir. 5/29/13), 114 So.3d 1265, 1271 (“we find that the circumstantial evidence of [defendant’s] actual possession and knowledge of the drugs .,. was established beyond a reasonable doubt.”). Similarly, I believe the evidence in the instant matter supports a finding of both actual and constructive possession of cocaine in this matter,